ACORN, The.

[See Nickerson v. The John Perkins, Case No. 10,252.]

---

## Case No. 31.

ACOSTA et al. v. The HALCYON.[1]

District Court. S. D. Florida. Sept. 1877.

SALVAGE—SEVERAL SALVORS—PRIORITY OF ARRIVAL.

[Under wrecking rule 4 in salvage cases prescribed by the district court of Florida, requiring that licensed wrecking vessels shall be admitted to assist at the wreck in the order in which they arrive, a vessel is deemed to have "arrived" when she is in reasonable hailing distance, ready to receive and obey orders; and a subsequent change in the position, by standing off and on, although she might be further from the wreck than another vessel just arriving, will not forfeit her right.]

In admiralty. Petition of Thomas Blake for a distributive portion of salvage.

LOCKE, District Judge. This is a petition under the fourth wrecking rule of this court, which requires that licensed wrecking vessels shall be admitted to assist at the wreck in the order in which the vessels themselves arrive. This rule was made for the purpose of preventing the practice at one time in vogue of several masters of vessels going to wrecks in large boats, forming consortships among themselves, in behalf of their vessels and crews, and excluding all who came afterwards, without regard to the whereabouts of their vessels. This case comes under this rule, and depends upon a construction of the language used as well as questions of facts. The petition alleges that the schooner "Wallace Blackford" arrived at the bark Halcyon before the schooner "Mary Matilda," which had been admitted to the consort; this the answer denies. It appears that the Mary Matilda was approaching the Halcyon considerably in advance of the Blackford, although in rather a different direction, she being on the outside of the reef, while the Blackford was on the inside; that her master and a part of her crew left her in a boat, and pulled on board the Halcyon, where they were permitted to go

to work some half or three quarters of an hour before either vessel arrived; that the Mary Matilda was in the vicinity of the bark, had communicated with her, and received orders to come alongside, but was standing off from her shortly before the arrival of the Blackford, but that they both came to anchor within three or four minutes of each other, the Mary Matilda somewhat nearer the bark than the Blackford. As to the exact moment at which the two vessels came to anchor the witnesses do not agree; some of them state that the Blackford anchored from three to five minutes first, while one who appears to have been the best situated to observe both vessels is very positive that, although the Blackford hauled down her jib first, the Mary Matilda let go her anchor first. If the question depended upon the moment of anchoring, the evidence would be unsatisfactory and far from conclusive; but in my opinion it does not depend upon that, but upon the time of arrival. The crew of the Mary Matilda, leaving her, and coming on board in a boat, can have no effect or influence in the question, for they gained thereby no rights as against the Blackford, provided that it is considered that she arrived first; nor does their having left their vessel prove that she was not ahead of the Blackford at the time of her arrival.

The arrival of a vessel does not necessarily imply anchoring, nor is it necessary that a vessel should be at anchor before she can be considered as having arrived, as the first anchoring might be at a much greater distance from a given point than the other at that time, or indeed the other not anchoring might be alongside the wreck. There is no exact distance from a wreck at a point within which a vessel must have reached before she can be considered as having arrived. There are no actual bounds within which a vessel must come, and no arbitrary distance can be determined in feet, yards, or fathoms, which might not very soon be proven unreasonable and inexpedient. Were it a boat coming to a vessel where she is accustomed to lie alongside, or a vessel coming to a dock where she is to be made fast, the term might be more easy of construction; but that is not the usual position of vessels at sea, nor would it be safe or reasonable to demand or require it. What construction, then, can be reasonably placed upon the term "arrived?" What were the needs of the rule? What want did it supply? What is the practical importance of having a vessel arrive before her services can be accepted? The former practice oftentimes, in theory, if not in fact, admitted vessels still so far absent as to be unable to render any service to property in distress, while others ready, willing, and able, on account of being present, to assist, were excluded, while the peril to the property was continuing or increasing, and it was to this

[1] [Published by permission from the MS. of Hon. James W. Locke, District Judge.]

point that such a rule is directed. All that an actual presence demands is that the vessel shall be sufficiently near to render assistance at a moment's notice,—receive and obey orders; to be within a communicating or reasonable hailing distance. When she is within such distance it is all that can practically be demanded, and it seems to me reasonable to consider that the rule has been complied with. I know of no fairer construction that can be placed upon the term "arrive," or better rule to accept or establish in regard to the distance of a vessel than that she must be within such a distance that orders may be readily and easily given and understood, so as to be acted upon, and so that she can obey them by coming alongside or rendering assistance in any other way without delay; or, in other words, she must be, wherever the circumstances will permit, within a reasonable hailing distance. When she has once reached such a point, a changing of her position by standing off and on, although she might be further from the wreck than another vessel just arriving, will not forfeit her right.

The question, then, in this case is, had the Mary Matilda arrived at or within a reasonable hailing distance of the bark before the Wallace Blackford? The testimony of Capt. Blake that before he came to anchor he saw her standing away from the bark; of Mr. Fagan, also, that she was standing off, and was about as far off as the Blackford; of Albury that she was within hailing distance, luffed up when he sent a boat for the other men, and with orders for her to come alongside; of Parks, in charge, that when word was brought to come up on the port side he didn't anchor, but stood off to come round,—unexplained, show that the Mary Matilda was standing off from the bark when the Blackford was coming up; that she had been within hailing distance, and had received orders to come alongside, and therefore had not come to anchor; that she had arrived at the bark, under a reasonable construction of that term, before the Wallace Blackford, and the petitioner has not sustained the allegations of his petition to the contrary, namely, that the Wallace Blackford arrived at the bark before the Mary Matilda. The burden of proof having been upon him to show this, and he having failed, the petition must be dismissed; each party having his own costs.